## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**CARMEN CIOTOLA, as assignee**  :
**of QUARTERBACK**
**TRANSPORTATION, INC.,**          :

           **Plaintiff**          :    **CIVIL ACTION NO. 3:21-1020**

      **v.**          :        **(JUDGE MANNION)**

**RSA INSURANCE GROUP, PLC,**  :
*et al.,*
                          :
      **Defendants**

## MEMORANDUM

### I.   FACTUAL BACKGROUND[1]

On June 9, 2021, plaintiff, Carman Ciotola, as the alleged assignee of Quarterback Transportation, Inc., ("Quarterback"), a Canadian policyholder, instituted this insurance action raising claims of bad faith and breach of contract, against defendants RSA Insurance Group, PLC, now known as RSA Insurance Group Limited, ("RSA Insurance Group"), an English

---

[1]Since the factual and procedural background of the underlying personal injury case involving Ciotola was stated in the court's 2020 Memorandum in civil action 19-cv-753, M.D. Pa., denying plaintiff's and Quarterback's cross-motions for summary judgment, *see* <u>Ciotola v. Star Transportation & Trucking, LLC</u>, 481 F.Supp.3d 375 (M. D. Pa. 2020), it is not fully repeated herein.

company based in London, Royal and Sun Alliance Insurance Company of Canada, ("RSA Canada"), a Canadian insurance company with its principal place of business in Toronto, and Royal and Sun Alliance Insurance Company, Inc., ("RSA Agency"), a Delaware corporation with an office in New York. Along with plaintiff's complaint, are attached Exhibits. (Doc. 1). Defendants RSA Canada and RSA Agency are wholly owned subsidiaries of defendant RSA Insurance Group.

According to the complaint,[2] at the time of Ciotola's underlying motor vehicle accident, Quarterback, a Canadian company with its address in Toronto, was insured by a policy of liability coverage with Chubb Insurance Company, ("Chubb Policy"), in the amount of $7,000,000. (Doc. 1 at ¶ 75). Additionally, Quarterback was insured by a policy of excess liability coverage with RSA Canada, the Comprehensive Logistics Policy, CLP 0070, ("RSA Policy"), effective from January 6, 2018 through January 6, 2019, in the amount of $1,000,000 (Canadian). (RSA Policy, Doc. 1-1 at 13-38 & Doc. 12-1 at 5-30). RSA Canada notified Quarterback regarding the availability of this excess insurance coverage in or around April of 2019. (Doc. 1 at ¶ 81).

---

[2]As indicated below, in applying the Rule 12(b)(6) standard, the court accepts the facts alleged in the complaint as true.

Subsequently, Ciotola put RSA Canada on notice of his settlement demand in his underlying car accident case, and it is alleged that despite this fact, RSA Canada failed to assign counsel to defend the interests of Quarterback in direct violation of the duties and obligations of RSA under the insurance policy with Quarterback. (Id., ¶ 83).

On August 26, 2020, Ciotola's counsel demanded the full $1,000,000 excess policy held by RSA Canada, and it is alleged that RSA failed to sufficiently respond on behalf of its insured. Counsel again demanded the policy limits from RSA Canada on September 5, 2020, and RSA once again failed to respond to this demand. (Id., ¶ 84-87).

On September 16, 2020, Ciotola and Quarterback filed a Joint Application for Entry of a Consent Judgment/Decree and Stipulation that the total possible damages in the underlying case exceed $9,000,000. RSA Canada was provided notice of the Joint Application and was given the opportunity to contest the filing, and assert defenses. However, RSA Canada did not act, and once again failed to assign counsel for Quarterback and respond in any manner. (Doc. 1 at 96).

On January 4, 2021, this court, in case No. 3:19-CV-753, granted the Joint Application for Consent Judgment and entered Judgment against Quarterback in the total amount of $9,000,000.

On January 5, 2021, Ciotola and Quarterback signed an Assignment of Rights Agreement in which Quarterback assigned all rights, claims, and potential causes of action of any kind whatsoever, including, any contractual claims and actions for common law and statutory Bad Faith, which it may have against RSA Canada, as well as its parent companies, affiliates and subsidiaries, arising out of the Consent Judgment/Decree entered in the underlying case. On January 9, 2021, Ciotola's counsel again demanded the policy limits from RSA Canada.

In the instant case, plaintiff Ciotola, the "alleged" assignee of Quarterback, a Canadian policyholder, asserts claims against RSA Canada, a Canadian insurance company, alleging that RSA refused to communicate with his counsel regarding the excess insurance policy as well as communicate with its insured, Quarterback, in any meaningful way regarding the underlying personal injury case. He also alleges that the actions and/or inactions of RSA Canada in failing to efficiently evaluate his claim in good faith violates Pennsylvania's Bad Faith statute, 42 Pa.Cons.Stat. §8371. (Id. at ¶'s 101-105).

On June 9, 2021, Ciotola, in his capacity as the alleged assignee for Quarterback, initiated this Bad Faith, Breach of Contract and Garnishment action against RSA defendants by filing a complaint. (Doc. 1).

- 4 -

On October 14, 2021, RSA defendants jointly filed a motion to compel plaintiff to proceed with Dispute Resolution/Arbitration Clause provided for in the RSA Policy and to stay the case, or, in the alternative, to dismiss the case, in part, under Rule 12(b)(2) and, in part, under 12(b)(6). (Doc. 11). The motion has been briefed and the parties submitted Exhibits. For the reasons set forth below, RSA defendants' motion to compel arbitration will be **GRANTED**. Ciotola will be directed to proceed with Dispute Resolution/Arbitration Clause since it covers the instant claims he is raising and, since it is binding and enforceable against him. The court will stay the proceedings in this case as to all claims against RSA defendants pending arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and the Federal Arbitration Act, ("FAA"), 9 U.S.C. §206. Thus, RSA defendants' alternate motion to dismiss Ciotola's complaint will be **STAYED** pending arbitration.

## II.   STANDARD

"When addressing a motion to compel arbitration, a court must first determine which standard of review to apply; *to wit*: either the motion to dismiss standard under Federal Rule of Civil Procedure 12, or the motion for summary judgment standard under Rule 56." Stephenson v. AT&T Services,

Inc., 2021 WL 3603322, *2 (E.D. Pa. Aug. 12, 2021) (citing Guidotti v. Legal Helpers Debt Resol., LLC., 716 F.3d 764, 771-72 (3d Cir. 2013)). "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Id.* (quoting Guidotti, 716 F.3d at 773-74) (internal citations omitted). "Where arbitrability is not apparent on the face of the complaint, the issue should be judged under the Rule 56 standard." *Id.* (citing Guidotti, 716 F.3d at 773-74; Griffin v. Credit One Fin., 2015 WL 6550618, at *2 (E.D. Pa. Oct. 29, 2015)).

In the instant case, the complaint and the Exhibits show, on their face, that there is the existence of a Dispute Resolution/Arbitration Clause contained in the RSA Policy with respect to the plaintiff's claims. Thus, the Rule 12(b)(6) motion to dismiss standard will be applied in reviewing RSA defendants' motion to compel arbitration and in determining the validity and enforceability of the Clause "without discovery's delay." [3] Guidotti, 716 F.3d

---

[3] Here, there is no dispute as to the existence of the agreement to arbitrate in the RSA Policy. Since Plaintiff submitted the RSA Policy with his complaint, (Doc. 1-1, Ex. D), as in Stephenson v. AT&T Services, Inc., 2021 WL 3603322, *2 n. 2, the court finds that there is no need "to conduct limited discovery on the question of arbitrability and finds that there is a sufficient
*(footnote continued on next page)*

at 776. *See also* Sanford v. Bracewell & Guiliani, LLP, 618 Fed.Appx. 114, 117-18 (3d Cir. 2015) ("Because the affirmative defense of arbitrability was therefore apparent from the face of the complaint and the documents relied upon therein, the motion should have been reviewed under Rule 12(b)(6) ….") (internal quotations and citation omitted).

Thus, the standard under Fed.R.Civ.P. 12(b)(6) will be applied in this case to the motion to compel arbitration which provides that dismissal is warranted if, "accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests." Hite v. Lush Internet, Inc., 244 F.Supp.3d 444, 449 (D. N.J. 2017 (citation omitted). "A complaint will survive a motion to dismiss if it contains sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Id*. (citing Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "Although a court must accept as true all factual allegations in a complaint, that tenet is inapplicable to legal conclusions, and [a] pleading that offers labels and conclusions or a

---

factual record regarding arbitrability and, therefore, no additional discovery is necessary."

formulaic recitation of the elements of a cause of action will not do." *Id*. (internal quotations and citation omitted).

## III.   DISCUSSION

Stated simply, and in viewing the factual allegations of the complaint in the light most favorable to the plaintiff, as the court must, s*ee* Guidotti v. Legal Helpers Debt Resolution, L.L.C*., 716 F.3d 764, 772–74 (3d Cir. 2013), the following pertinent facts appear:

In 2019, Ciotola instituted the underlying personal-injury action in case No. 3:19-cv-753, M.D. Pa., against Quarterback and as well as other defendants, seeking damages for injuries he sustained in an accident. Quarterback's primary insurer, Chubb Insurance Company of Canada, appointed counsel to defend Quarterback in the underlying case. After this court denied Plaintiff's and Quarterback's cross-motions for summary judgment, Plaintiff and Quarterback, who was represented by company counsel rather than Chubb-appointed defense counsel, filed a "Joint Application for Entry of Consent Judgment/Decree," in which they requested this court to enter a $9 million judgment against Quarterback. (No. 3:19-cv-753, Doc. 105). The Court granted the request, however it "refrain[ed] from making any findings(s) or determinations as to whether, for insurance coverage purposes, the settlement was fair, reasonable, done in good faith

and non-collusive." (Id., Doc. 120). After the consent judgment was entered, Ciotola alleges that he obtained a written assignment of whatever rights Quarterback may have had against RSA Canada. (Doc. 1, ¶ 8).

Ciotola then commenced the instant case, acting as Quarterback's assignee, against defendants RSA Canada, RSA Insurance Group, and RSA Agency. Ciotola alleges that all three defendants breached the insurance policy underwritten by RSA Canada and acted in "bad faith." (Doc. 1, ¶¶ 107–120).

The Exhibits submitted by the parties also show the following facts. RSA Canada is a Canadian insurance company whose principal office is in Toronto. (Doc. 12-1, Declaration of Steven Wong, ¶¶ 3–4). In 2018, RSA Canada, through Coast Underwriting Ltd., underwrote a Comprehensive Logistics Policy, (RSA Policy No. CLP 0070), with the Policy Holder being Quarterback, a Canadian corporation domiciled in Toronto. (Id. ¶¶ 6, 8 & Doc. 12-1 at 3, Declarations Page; Doc. 1, ¶ 2). Quarterback used a Canadian insurance broker, Aon Reed Stenhouse Inc., to obtain the policy. (Doc. 12-1, Wong Decl. ¶ 7 & Ex. A at 1, 4). The policy was underwritten, negotiated, issued, and delivered in Canada, and the premiums were paid in Canada. (Id., Wong Decl. ¶¶ 9, 11). The policy included a Canadian choice-of-law clause which stated that "[t]his policy shall be interpreted in

accordance with the laws of Canada." (Doc. 12-1, Wong Decl., Ex. A at 25, ¶ 28).

Significantly, the RSA Policy, (Doc. 12-1 at 26–27, ¶12), also included a Dispute Resolution/Arbitration Clause, which plainly stated as follows:

**12) DISPUTE RESOLUTION/ARBITRATION CLAUSE**

In the event that the Insurer and the **Insured** cannot agree concerning the coverage afforded by this **policy**, it is agreed that the dispute shall be resolved in accordance with the dispute resolution process hereinafter described:

(a)   Mediation with a mediator mutually agreed to by the parties to the dispute. If the parties fail to concur on the choice of the mediator, a court shall appoint a mediator on motion by one of the parties.

(b)   If settlement at mediation is not possible, the dispute shall be referred to Arbitration in accordance with the applicable arbitration legislation or regulations in the jurisdiction in which the **policy** is issued. The decision of the arbitrator shall be binding on all parties to the dispute with no right of appeal.

(c)   Each party shall bear its own costs and expenses in connection with the dispute resolution process. The costs and expenses of mediation and arbitration shall be shared equally by the parties to the dispute.

By agreement in writing, the Insurer and the **Insured** may waive compliance with this part or any part thereof for purposes of a specified dispute.

The policy also provided that it was "specifically excess of any other valid and collectible insurance . . . unless such other insurance is specifically stated to be in excess of this **policy**." (Id. at 28, ¶ 25).

The law is clear that since Ciotola is the alleged assignee of Quarterback's rights, he has no greater rights than Quarterback itself had at the time of the alleged assignment regarding the RSA Policy. *See* Campbell v. State Farm Mut. Auto. Ins. Co., 617 F.Supp.2d 378, 382 (W.D. Pa. 2008) (holding that "it is well established that, upon assignment of a claim, the assignee obtains no greater rights than the insured.") (citing Adamski v. Allstate Ins. Co., 738 A.2d 1033, 1039 (Pa.Super. 1999)). As discussed below, the court finds that since the RSA insurance policy contained a mandatory dispute-resolution procedure, Ciotola must follow that procedure in order to proceed with his claims against the defendants since they relate to coverage under the policy.

Ciotola is raising his instant claims based on a Canadian insurance policy issued to Quarterback which requires that any dispute "concerning the coverage afforded by this policy" be referred to mediation, and "[i]f settlement at mediation is not possible, the dispute shall be referred to Arbitration in accordance with the applicable arbitration legislation or regulations in the jurisdiction in which the policy is issued." Further, the arbitrator's decision as

to the coverage dispute is binding on all parties. (Doc. 1-2 at 26–27, ¶ 12).
The insurance policy was issued in Canada, which, like the United States, is
a signatory to the Convention on the Recognition and Enforcement of
Foreign Arbitral Awards, (the "Convention").[4]

"[The Convention] governs cases in which a party seeks to compel
arbitration outside of the United States." Authenment v. Ingram Barge Co.,
878 F.Supp.2d 672, 676 (E.D. La. 2012). "The United States joined the
Convention in 1970." *Id*. "Congress implemented the Convention by enacting
Chapter 2 of Title 9 of the United States Code ("the Convention Act"). *Id*.
(citing 9 U.S.C.A. §201, *et seq.*). According to the Supreme Court, "[t]he goal
of the Convention was to encourage the recognition and enforcement of
commercial arbitration agreements in international contracts and to unify the
standards by which agreements to arbitrate are observed and arbitral awards
are enforced in the signatory countries." *Id.* Further, "[t]he Convention
applies to arbitration agreements between citizens of nations that are
signatories to the Convention." *Id*. *See also* Szczepanik v. Through Trans.

---

[4]As noted in Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan
Minyak Dan Gas Bumi Negara, 364 F.3d 274, 281 n. 2 (5th Cir. 2004), "United
Nations Convention on the Recognition and Enforcement of Foreign Arbitral
Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (entered into force
with respect to the United States, Dec. 29, 1970), *codified at* 9 U.S.C. §201
*et seq.*"

Mut. Ins. Ass'n, Ltd., 2008 WL 2166193, *2 (D. N.J. May 21, 2008) ("Federal courts operate under a federal policy that favors arbitration, especially with respect to international commercial agreements.") (citing Flexi–Van Leasing, Inc. v. Through Transport Mutual Insurance Association, Ltd. and Thomas Miller (Americas) Inc., 108 Fed.App'x 35, 38 (3d Cir. 2004)). Canada is a signatory to the Convention.

Importantly, as the court in Authenment, 878 F.Supp.2d at 677, explained:

> "The Convention Act incorporates the entire Federal Arbitration Act ("FAA") to the extent that the two do not conflict." Todd, 2011 WL 1226464, at *2 (citing 9 U.S.C. §208). The FAA governs the validity and enforceability of an agreement to arbitrate in the United States and explicitly applies to any maritime transaction. 9 U.S.C.A. §2. A district court's power to order arbitration under the FAA, however, is limited to arbitrations that will take place "[w]ithin the district in which the petition for an order directing such arbitration is filed." Todd, 601 F.3d at 332 n. 4. As a result, the Convention governs when a party seeks to compel arbitration outside of the United States. Id.
>
> Under the Convention Act, "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C.A. §206. "The Convention and its implementing legislation do not explicitly authorize staying litigation pending arbitration, and thus parties whose arbitration agreements fall under the Convention have had to seek authority for stays under 9 U.S.C. sec. 3, a provision

of the domestic FAA." *Todd,* 601 F.3d at 332.[5] Under the Convention and the Convention Act, courts "[s]hould compel arbitration if (1) there is an agreement in writing to arbitrate the disputes, (2) the agreement provides for arbitration in the territory of Convention signatory, (3) the relationship arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen." *Francisco v. STOLT ACHIEVEMENT MT,* 293 F.3d 270, 273 (5th Cir. 2002).

*See also* Standard Bent Glass Corp. v. Glassrobots Oy*,* 333 F.3d 440, 448–49 (3d Cir. 2003) ("Where a dispute arises from an international commercial agreement, [the above stated] four elements determine whether the arbitration agreement is governed by the Convention.").

Thus, "[b]efore a federal district court may compel a party to arbitration under the Convention, …, it 'must engage in a limited review, to ensure that a valid agreement to arbitrate exists between the parties and the specific dispute falls within the substantive scope of that agreement.'" Szczepanik, 2008 WL 2166193, *2 (quoting Flexi–Van Leasing, Inc., 108 Fed.App'x at 38). Further, "[i]f all four of th[e] [above] elements are met, the court must

---

[5]"[T]he plain language of [9 U.S.C.] §3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." Torres v. CleanNet, U.S.A., Inc., 90 F.Supp.3d 369, 371 n. 1 (E.D. Pa. 2015) (citing Lloyd v. HOVENSA, LLC.*,* 369 F.3d 263, 269 (3d Cir. 2004)). "[T]he statute clearly states, without exception, that whenever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the litigation until arbitration has been concluded." *Id.*

order arbitration unless it determines the agreement is null and void." *Id*. (citations omitted).

The court finds that the four requisite factors under the Convention and the Convention Act to compel arbitration are met in this case. First, the RSA Policy is an "agreement in writing" for purposes of the Convention providing for arbitration in Canada, which is a territory of a signatory, and the arbitration clause in Quarterback's insurance policy provided that absent a mediated settlement, "the dispute shall be referred to Arbitration." (Doc. 12-1 at 26-27). Next, as defendants point out in their brief, (Doc. 12 at 13), "Plaintiff is asserting a right to coverage under the insurance policy—a matter that indisputably 'concern[s] the coverage afforded by this policy' and is thus within the terms of the policy's Dispute Resolution/Arbitration Clause." Thus, the agreement provides for arbitration of the Canadian insurance contract in Canada, a signatory to the Convention. The relationship between the parties arises out of a contractual commercial legal relationship, and a party to the agreement, namely, RSA Canada, is not an American citizen. The insurance policy at issue was placed by a Canadian insurance broker and was underwritten, negotiated, issued, and delivered in Canada for the benefit of Quarterback, a Canadian company. Also, the premiums were paid in Canada. (*See* Wong Decl., Doc. 12-1). The insurance policy provided that it

was governed by Canadian law and, as discussed, clearly required coverage disputes to be resolved through Canadian arbitration.

At issue is the first factor, namely, whether there is an agreement in writing to arbitrate the subject of the dispute, i.e., the scope of the arbitration clause and whether the claims Ciotola raises in his instant complaint are covered by it.

There is no dispute that Quarterback's insurance contract with RSA contained an arbitration agreement that requires policy coverage disputes between the Insurer and the Insured be resolved by the dispute resolution process proved in the policy, namely, arbitration. Nor is there any dispute that Quarterback's and RSA Canada were parties to the insurance contract. (Doc. 12-1 at 7-9). In fact, Ciotola attached the contract to his complaint, and referenced it in his pleading to support his breach of contract claim. (*See also* Doc. 12-1). Even though the court is utilizing the motion to dismiss standard and generally may not consider matters outside of the pleadings, here, the sale contracts can be considered since a "document integral to or explicitly relied upon in the complaint may be considered...." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997).

Steven Wong, Claims Technical consultant with RSA Canada, also attached to his Declaration, the RSA Canada insurance policy, (Doc. 12-1 at

26-27), under which Ciotola is bringing his claims, which specifies that any dispute "concerning the coverage afforded by this policy" be referred to mediation, and "[i]f settlement at mediation is not possible, the dispute shall be referred to Arbitration in accordance with the applicable arbitration legislation or regulations in the jurisdiction in which the policy is issued." Since the policy was issued in Canada and Canada was a signatory of the Convention, the Convention and the Convention Act, which incorporates the FAA, applies to this case and directs that Ciotola must arbitrate his claims in Canada if they constitute disputes under the Arbitration Clause.

Based on the arbitration clause, RSA defendants move the court to stay this case as against them and to compel Ciotola to arbitrate his claims against them pursuant to the clause.

"The FAA 'establishes a strong federal policy in favor of compelling arbitration over litigation.'" Stephenson v. AT&T Services, Inc., 2021 WL 3603322, *3 (quoting Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 104 (3d Cir. 2000)). Under §2 of the FAA, "[a] written provision in any ... contract ... to settle by arbitration ... shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Hite v. Lush Internet, Inc., 244 F.Supp.3d at 449-50 (citing 9 U.S.C. §2); Rent–A–Center, West, Inc. v. Jackson, 561 U.S. 63, 68, 130 S.Ct. 2772,

- 17 -

177 L.Ed.2d 403 (2010)). "Arbitration is 'strictly a matter of contract'", and only if a party has agreed to arbitrate, will the court be authorized to mandate that he do so. Sanford, 618 Fed.Appx. at 117 (citing Bel–Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999)).

As the court in Stephenson v. AT&T Services, Inc., 2021 WL 3603322, *3, explained:

> [9 U.S.C. §2] "reflects the fundamental principle that arbitration is a matter of contract." Rent–A–Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010). Further, §2 "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." Id. (internal citations omitted). A "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. §4. In hearing such a petition, the court "must resolve 'any doubts concerning the scope of arbitrable issues ... in favor of arbitration.'" CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 172 (3d Cir. 2014) (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24–25).

The court now determines whether Ciotola's claims against RSA defendants are within the scope of the arbitration agreement. Ciotola contends that he is not required to follow the mandatory arbitration contained in the RSA Policy since he is not raising a dispute concerning coverage in this case. Ciotola explains his position in his brief, (Doc. 14 at 12), as follows:

> A plain reading of Plaintiff's Complaint confirms that he seeks relief under the following causes of action: Bad Faith, Breach of Contract, and Garnishment. See Doc. 1. No party to this action

has asked the Court to decide whether insurance coverage is available to Quarterback under this policy. As RSA has acknowledged, there is coverage. This action is for payment of that coverage as well as the Bad Faith actions of RSA in handling the underlying claim. Simply put, arbitration cannot be compelled in this instance because coverage is not at issue.

Ciotola argues that RSA Canada is providing coverage under the RSA Policy and has not raised the issue of coverage. He argues that RSA had opportunities to dispute coverage but it failed to take any action to do so. He further points out that RSA never issued reservation of rights or a denial of coverage. Specifically, Ciotola alleges that in its September 28, 2020 letter to counsel for Quarterback, RSA Canada's counsel indicated that there is coverage and that it should be analyzed under Pennsylvania's Fair Share Act. (citing Doc. 14-2, Ex. B & Doc. 1 at ¶ 57). As such, he contends that his claims alleging RSA's failure to efficiently evaluate his insurance claim in good faith and its breach of its contractual duty to pay under the policy "fall[] well outside the scope of the RSA Policy's mandatory dispute resolution clause."

Initially, the court does not read the September 28, 2020 letter as any admission by RSA Canada's counsel that there is coverage. In fact, in the letter, (Doc. 1-1 at 9-11 & Doc. 14-2), Coast Underwriters Ltd. advised the policyholder, Quarterback, that any concession of liability without the insurance company's consent "will disentitle Quarterback Transportation

from any claim for indemnity pursuant to the terms of the [RSA] Policy." The letter then states: "Any settlement reached (including a consent to judgment) without the express written consent of the Insurers, as noted above, does not bind the Insurers to any settlement nor will it obligate Insurers to indemnify Quarterback Transportation in respect of that judgment." Further, the letter noted that "the Policy specifically prohibits" any purported assignment of policy rights without the insurance company's consent, and then concluded with an express reservation of rights by stating: "The Insurers do not waive any of their[] rights under the Policy and expressly reserve their entitlement to rely upon all terms and conditions of the Policy."

Moreover, the court reads Ciotola's complaint and Exhibits to show that his claims center around disputes concerning coverage issues despite the fact that he did not include a claim for declaratory relief as to coverage and asserted a garnishment action instead. Ciotola relies more upon semantics regarding the labels he affixes to his claims which are not determinative. See Brennan v. General Accident Fire & Life Assurance Corp., 524 Pa. 542, 574 A.2d 580, 582 (1990), the policy provided for arbitration "'[i]f [the insurance company and the insured] do not agree about the insured's right to recover damages or the amount of damages,' the dispute will be submitted to arbitration." Nationwide Ins. Co. v. Paterson, 953 F.2d 44, 45 (3d Cir. 1991).

- 20 -

The Pennsylvania Supreme Court "gave an expansive interpretation to an arbitration provision" …, *see* <u>Nationwide</u>, 953 F.2d at 45, and construed the clause as mandating arbitration "whenever the insured and the insurer disagree as to when a party is legally entitled to recover damages." <u>Brennan</u>, 574 A.2d at 583.

In fact, as defendants point out, (Doc. 16 at 6), "none of the claims Plaintiff has asserted could succeed without a finding of coverage [i.e., that RSA Canada breached a duty by failing to provide Quarterback with coverage under the RSA Policy] in the first instance." Indeed, to state a breach of an insurance contract claim under Pennsylvania law as raised in Count I of the complaint, plaintiff must meet the following elements: (1) the existence of a contract; (2) breach of a contractually imposed duty; and (3) resulting damages. <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 225 (3d Cir. 2003).

Additionally, as defendants aptly explain, (Doc. 16 at 7-8), in their reply brief:

> In his breach-of-contract claim, Plaintiff alleges that RSA Canada, by not paying the policy limits to Plaintiff, breached an obligation to provide coverage. (Doc. No. 1 at ¶¶ 109–112). In other words, Plaintiff's breach-of-contract claim is inherently a claim for coverage, *see, e.g.*, <u>Gillin v. Universal Underwriters Ins. Co.</u>, 2011 WL 780744, at *4 (E.D. Pa. Mar. 4, 2011), and thus "concern[s] the coverage afforded by [the] policy." Adjudicating the breach-of-contract claim would entail a determination of the

RSA Canada excess policy's status in relation to that of the Chubb primary policy, and a further determination of whether there is any excess coverage at all where, as here, the policyholder breached the policy terms and conditions by stipulating to liability, agreeing to a $9 million consent judgment, and purportedly assigning its rights to Plaintiff, all without the insurer's consent.

Likewise, Ciotola's Pennsylvania claim for bad faith, Count II, involves a determination of coverage. "In order to show bad faith [under Pennsylvania law], a claimant must ultimately establish by clear and convincing evidence both that: 1) the insurer lacked a reasonable basis for denying benefits; and 2) the insurer knew or recklessly disregarded its lack of reasonable basis." Padilla v. State Farm Mut. Auto. Ins. Co., 31 F.Supp.3d 671, 675 (E.D. Pa. 2014) (citations omitted). The Third Circuit has held that a bad faith claim "necessarily fails" if the insurance company "correctly concluded that there was no potential coverage under the policy." USX Corp. v. Liberty Mut. Ins. Co., 444 F.3d 192, 202 (3d Cir. 2006) (citing The Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 751 n. 9 (3d Cir. 1999) (affirming district court which held that, under Pennsylvania law, "bad faith claims cannot survive a determination that there was no duty to defend, because the court's determination that there was no potential coverage means that the insurer had good cause to refuse to defend").

Ciotola's garnishment action, Count III, also could not proceed without a determination that the RSA Policy affords coverage. "Pennsylvania courts permit a tort plaintiff to institute a garnishment action against a defendant's insurer." Scanlin v. Utica First Ins. Co., 426 F.Supp.2d 243, 247 (M.D. Pa. 2006). "In a motor vehicle trespass action resulting in judgment against an insured defendant, execution against the defendant's insurer as garnishee has long been recognized under prior practice and under the present Rules of Civil Procedure as a means of satisfying plaintiff's judgment." *Id*. Thus, "[i]nsurance coverage issues may be litigated in a garnishment action." *Id*. As such, absent a determination of coverage under the RSA Policy, there would be nothing for Ciotola to garnish. *See id*. at 249 (holding "Pennsylvania courts permit a tort plaintiff to institute a garnishment action against a defendant's insurer in order to resolve coverage issues and even to assert bad faith claims.").

While Ciotola points out that insurance contracts are to be construed in favor of the insured, he neglects the well-settled case law that "regarding the scope of the arbitrable issues, a district court should resolve all doubts in favor of arbitration." Sweiger v. Calvary Portfolio Services, LLC, 2012 WL 1940678, *2 (W.D. Pa. May 29, 2012) (citing Moses H Cone Memorial

Hospital v. Mercury Constr. Corp*.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 (1983)).

Further, it is of no moment that RSA defendants seek to enforce the arbitration agreement against Ciotola, a non-signatory of the RSA Policy. Plaintiff Ciotola is a third party to the insurance contract who brought claims against defendants, as Quarterback's assignee, and thus, the arbitration agreement is enforceable against him just as it is enforceable against Quarterback. Based on Third Circuit precedence, courts will "enforce an arbitration agreement against a non-signatory to an arbitration clause, ... [if] 'he or she is bound by that agreement under traditional principles of contract and agency law.'" E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S*.,* 269 F.3d 187, 195 (3d Cir. 2001).

As the court in Ciber Global, LLC v. SAP America, Inc., 2021 WL 1141661, *6 (E.D. Pa. March 25, 2021), recently explained:

> [I]n *Smith v. Cumberland Group*, …, the Superior Court considered whether an "arbitration clause contained in a construction contract between an owner and a general contractor who then assigned the contract to another contractor is invoked in a contract dispute between the owner and the assignee-contractor." 687 A.2d 1167, 1169 (Pa. Super. Ct. 1997). The Court concluded the arbitration clause was assignable as part of "the contract as a whole" because "[w]here an assignment is effective, the assignee stands in the shoes of the assignor and assumes all of his rights." *Id.* at 1172; *see* Cecil Twp. Mun. Auth. v. N. Am. Specialty Sur. Co., 836 F. Supp. 2d 367, 385 (W.D. Pa.

- 24 -

2011) ("'Ultimately, an assignee stands in the shoes of the assignor.'").

Also, as RSA defendants indicate, "Plaintiff has chosen to sue not only the RSA Canada (the actual insurer), but also RSA Insurance Group and RSA Agency, neither of which was a party to the insurance contract."

Further, since plaintiff is suing in the capacity of Quarterback's assignee, he is bound by the clauses of the RSA Policy, including the clause requiring coverage disputes to be resolved through arbitration. "[U]nder Pennsylvania law, an assignee 'stands in the shoes of the assignor' with regards to the right or duty assigned." Sweiger, 2012 WL 1940678, *3. As such, Ciotola, as the assignee of Quarterback's rights in the RSA Policy, stands in Quarterback's shoes. *See* Szczepanik, 2008 WL 2166193, *3. Further, "[t]he law is clear that a third party beneficiary is bound by the terms and conditions of the contract that it attempts to invoke. 'The beneficiary cannot accept the benefits and avoid the burdens or limitations of a contract.'" *Id*. (quoting Interpool Ltd. v. Through Transport Mut. Ins. Ass'n Ltd., 635 F.Supp. 1503, 1505 (S.D. Fla. 1985)). Also, "as the Third Circuit has held, 'an assignment cannot alter a contract's bargained-for remedial measures, for then the assignment would change the very nature of the rights assigned.'" *Id*. (quoting Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532–33 (3d Cir. 2005)).

In any event, as defendants, (Id. at 14), explain:

> The [arbitration] clause by its terms is triggered "[i]n the event that the Insurer and the Insured cannot agree concerning the coverage afforded by this policy, and in such an event "the dispute shall be resolved in accordance with the dispute resolution process hereinafter described." The clause itself does not require that the "dispute" be solely between the contracting parties, as long as there is a disagreement between the Insurer and the Insured (or in this case, an alleged assignee of the Insured) "concerning the coverage afforded by this policy."

Under the FAA, the court must "interpret the contract as written", Henry Schein, Inc. v. Archer and White Sales, Inc., ⸺ U.S. ⸺, 139 S. Ct. 524, 529, 202 L.Ed.2d 480 (2019), and "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that, 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" Lukens Steel Co. v. United Steelworkers, 989 F.2d 668, 672–73 (3d Cir. 1993) (citations omitted).

In short, since Ciotola avers that Quarterback assigned its rights to him under the RSA Policy, he is bound by the provision of that policy which requires that coverage disputes under the policy, as he raises in his instant claims, shall be resolved by arbitration in Canada. *See* Szczepanik, 2008 WL 2166193, *4.

## IV.   CONCLUSION

Based on the foregoing, the court will **GRANT** the motion to compel Ciotola to comply with the arbitration clause in the RSA Policy filed by RSA defendants, **(Doc. 11)**, and the court will **STAY** the litigation with respect to all of the claims against RSA defendants. *See* Colon v. Conchetta, Inc., 2017 WL 2572517, at *7. The alternate motion to dismiss Ciotola's complaint, (Doc. 1), filed by RSA defendants, **(Doc. 11)**, will be **DISMISSED WITHOUT PREJDUICE** to re-file it after the completion of arbitration. An appropriate Order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: January 20, 2022**
20-1020-01

- 27 -